Warren WIKEL, Plaintiff,

v.

WAL–MART STORES, INC., Defendant.

No. 00–CV–151–K(J).

United States District Court,
N.D. Oklahoma.

Nov. 13, 2000.

---

James Robert Lloyd, Nancy Lloyd, Lloyd & Lloyd, Sand Springs, OK, for Warren Wikel.

Mark T. Steele, Douglas Evan Stall, Latham Stall Wagner Steele & Lehman PC, Tulsa, OK, for Wal–Mart Stores, Inc., a Delaware corporation.

### *ORDER*

JOYNER, United States Magistrate Judge.

Now before the Court is Defendant's motion to quash a subpoena *duces tecum* served on Claims Management, Inc. ("CMI"). [Doc. No. 16]. CMI is the claims adjuster for Defendant. Defendant argues that the entire contents of CMI's file is protected from discovery by the work product doctrine. The Court held a hearing on Defendant's motion on November 6, 2000 and ordered Defendant to produce the CMI claims file *in camera* for review by the Court.

Defendant produced the CMI claims file *in camera* on November 7, 2000. The Court has reviewed the file to determine whether its contents are protected by the work product doctrine. Based on argument of counsel and a review of the CMI file, the Court finds that portions of the CMI file are work product. Consequently, Defendant's motion to quash is **GRANTED IN PART AND DENIED IN PART.**

## I. DISCUSSION

The Federal Rules of Civil Procedure define "work product" with the following language:

[A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for the trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).[1]

■ To sustain a claim of work product protection, Defendant must demonstrate that the documents at issue were prepared in anticipation of litigation by or for Defendant or by or for Defendant's representative. If Defendant can make the required showing to establish work product protection for a certain documents, Plaintiff can obtain production of those documents only if he can demonstrate that he has "substantial need of the materials in the preparation of [his] case and that [he] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). If work product documents are produced to Plaintiff based on Plaintiff's substantial need, the Court will ensure that the mental impressions, conclusions, opinions, or legal theories of Defendant's representatives are not disclosed.

There is no dispute here that the documents at issue were prepared by CMI or that CMI is Defendant's representative for purposes of Rule 26(b)(3). Plaintiff has also not attempted to establish Rule 26(b)(3)'s substantial need exception. The only issue, therefore, is whether the documents in question were prepared in anticipation of litigation.

■ Like the Fourth Circuit, the Court takes

notice of the fact that members of society tend to document transactions and occurrences to avoid the foibles of memory and to perpetuate evidence for the resolution of future disputes. And because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet, "[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials" with work product immunity. *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983). *See also Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C.1982) ("The fact that a defendant anticipates the contingency of litigation resulting from an accident or an event does not automatically qualify an 'in house' report as work product."). The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.

*National Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984–85 (4th Cir.1992).

■ Involvement of an attorney is not dispositive of the "in anticipation of litigation" issue. Nevertheless, involvement of an attorney is a highly relevant factor. The involvement of an attorney makes it more likely than not that the focus has shifted toward litigation, making materials more likely to have been prepared in anticipation of litigation.

■ The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an accident report as work product. If the investigation of the accident would normally be undertaken, an investiga-

*Frontier Refining Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir.1998).

---

**1.** In federal courts, work product issues are governed, even in diversity cases, by the uniform federal standard embodied in Rule 26(b)(3).

tive report developed in the ordinary course of business will not be protected as work product. Following any serious accident, it can be expected that designated personnel will conduct investigations, not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency, and to respond to regulatory obligations. Determining whether anticipated litigation is the driving force behind the preparation of each requested document is the central inquiry in resolving work product questions. *See Binks,* 709 F.2d at 1119.

█ The Court has reviewed the CMI claims file to determine when the focus shifted from routine claims investigation to anticipation of litigation. The Court finds that the focus shifted very early on in February 1999, when Plaintiff told CMI's adjuster that he would get an attorney if Defendant did not pay his medical bills, and that he had a brother-in-law at TV Channel 6 who would love to get his hands on this story.

There are 47 notes in the CMI file delivered to the Court. CMI shall produce the first 16 notes to Plaintiff. CMI need not produce notes 17–47. The Court finds that these later notes were prepared after Defendant could reasonably anticipate litigation. Defendant shall also produce to Plaintiff the five page "Index" report and the five page "Recorded Interview" report contained in the CMI file. The Court finds that these reports were generated as part of CMI's routine claims investigation prior to that point at which litigation could reasonably be anticipated.

### CONCLUSION

Defendant's motion to quash the subpoena *duces tecum* served on CMI is **GRANTED IN PART AND DENIED IN PART.** [Doc. No. 16]. CMI shall produce notes 1–16, the Index Report and the Recorded Interview report contained in the CMI claims file. As to all other portions of the CMI claims file, the subpoena *duces tecum* is quashed.

IT IS SO ORDERED.